# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

THOMAS TYLER,

     Plaintiff,

v.

THE VONS COMPANIES, INC.,

     Defendant.

Case No. 2:08-CV-001237-KJD-PAL

**ORDER**

Presently before the Court is Defendant Vons Company, Inc.'s Motion for Summary Judgment (#26).  Plaintiff Thomas Tyler filed a Response in Opposition (#29), to which Defendant filed a Reply (#30).

**I. Procedural Background and Facts**

Plaintiff Thomas Tyler ("Tyler") was hired by Vons Companies, Inc. ("Vons") as a clerk in 1985.  (Tyler Dep. 8:9–10, Aug. 17, 2009.)  Tyler was terminated from his employment in August 2007.  (Tyler Dep. 8:11–16.)  The last position Tyler held with Vons was that of Grocery Receiver at the Vons store located in Boulder City, Nevada.  (Tyler Dep. 8:17–19, 10:6–8.)

Plaintiff filed his Complaint on September 17, 2008, bringing three claims against Vons, alleging that during his employment he was subjected to (1) sexual harassment; (2) gender discrimination; and (3) retaliation—namely the termination of his employment.  (Pl.'s Compl. 5:20–23.)

1

In the latter half of September 2006 Plaintiff reported to the Vons Human Resource Department that he had been sexually harassed by Anna Jones ("Jones"), a Vons District Shrink Specialist.  (McHugh Decl. 2:3; See Tyler Dep. 70.)  The Vons Human Resource Advisor, Mike McHugh ("McHugh") responded to Tyler's report and investigated the situation. (McHugh Decl. 2:3–15; See Tyler Dep. 70.)

According to Jones and Tyler, on September 15, 2006, Jones visited the Vons store located in Boulder City, Nevada.  Jones had been instructed to investigate the store's receiving books, due to an inventory shortage.  (Jones Decl. 2:5–9.)  The receiving books were kept by Tyler and located in his office.  (Jones Decl. 2:5–9.)  Jones used the corner of Tyler's office to perform her review.  (Jones Decl. 2:5–9.)  Tyler asked Jones to use another room for her review, but Jones declined because of the number and size of the fifteen receiving books she needed to review.  (Jones Decl. 2:5–9; 2:10–13.)

Allegedly, while Jones was in the room, Tyler had to periodically retrieve invoices from the office printer.  (Tyler Dep. 29:1–6.)  That printer was located near Jones and Plaintiff avers that when he retrieved invoices from the printer, he had to "brush by" Jones and "bend down inches from her crotch." (Tyler Dep. 30:7–10.)  Plaintiff avers that he found this "degrading and sexually inappropriate." (Tyler Dep. 34:4–10.)

After completing his investigation of the situation, McHugh concluded that nothing inappropriate had occurred and that Jones had not said nor done anything of a sexual nature. (McHugh Decl. 2:3–10.)  Additionally, Plaintiff admitted in his deposition that Jones never initiated any physical contact with him.  (Tyler Dep. 50:10–24.)

In an unrelated incident, on July 27, 2007, Jones noticed a clipboard with photos and a note that Tyler had posted outside of his office.  (Jones Decl. 2:19–20; See Tyler Dep. 108:2 –22.)  The photos included an image of Tyler's mother, who had several bruises from an accident she had sustained.  (Jones Decl. 2:20–21; Tyler Dep. 110:14–16.)  The note was directed to Vons' outside

2

1  vendors and explained that Tyler had taken a Family and Medical Leave Act (FMLA) leave of

2  absence to care for his mother.  (Jones Decl. 2:1–22.)

3        Jones informed the store manager, Susan Martinez ("Martinez"), of the clipboard and its

4  content.  (Martinez Decl. 2:1–4.)  Martinez approached Tyler and took the clipboard down, stating

5  that it was unprofessional and inappropriate for the workplace.  (Martinez Decl. 2:4–5.)  However,

6  less than forty-five minutes later Tyler once again displayed the clipboard.  (Martinez Decl.2:11–13.)

7  Jones again reported this behavior to Martinez, who verified the information and then spoke with

8  James Guy ("Guy"), from Vons' Loss Prevention, about the situation. (Jones Decl. 2–3; Martinez

9  Decl. 2: 11–15; see Tyler Dep. 107–10.)  Guy advised Martinez to suspend Tyler for insubordination

10  and Martinez did so the following day.  (Martinez Decl. 2:13–15.)

11        Tyler then filed a grievance with his local Union. (Tyler Dep. 126:2–4.)  Subsequently, Vons

12  sent a proposal to Tyler, stating that he could return to work, on the condition that this was his last

13  and final employment opportunity with respect to violation of company policies and procedures

14  regarding misconduct and insubordination.[1]  (Tyler Dep. 126.)  Tyler refused the proposal.  (Tyler

15  Dep. 131: 17–19.)  Here, Vons seeks that the Court grant summary judgment on all three of Tyler's

16  claims.[2]

17  **II. Standard for Summary Judgment**

18        Summary judgment may be granted if the pleadings, depositions, answers to interrogatories,

19  and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

20  material fact and that the moving party is entitled to a judgment as a matter of law.  See Fed. R. Civ.

21  

22      [1] In Tyler's deposition, the Compromise and Release Settlement Agreement that Vons provided to Tyler is

23  reportedly marked as Exhibit Number 9.  That exhibit, however, was not submitted to the Court.

24      [2] In his Response, Plaintiff states his nonopposition to Vons' Motion for Summary Judgment with respect to his claims of Sexual Harassment and Gender Discrimination.  (Pl.'s Resp. 4–9.)  Plaintiff, however, does oppose summary

25  judgment for his retaliation claim.  (Pl.'s Resp. 4–9.)  Accordingly, the Court hereby dismisses Plaintiff's claims for sexual harassment and gender discrimination.

26

1  P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the

2  initial burden of showing the absence of a genuine issue of material fact.  See Celotex Corp. v.

3  Catrett, 477 U.S. at 323.  The burden then shifts to the nonmoving party to set forth specific facts

4  demonstrating a genuine factual issue for trial.  See Matsushita Elc. Indus. Co. v. Zenith Radio Corp.,

5  475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e).

6       All justifiable inferences must be viewed in the light most favorable to the nonmoving party.

7  See Matsushita, 475 U.S. at 587.  However, the nonmoving party may not rest upon the mere

8  allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or

9  other evidentiary materials provided by Rule 56(e), showing there is a genuine issue for trial.  See

10  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The court need only resolve factual

11  issues of controversy in favor of the non-moving party where the facts specifically averred by that

12  party contradict facts specifically averred by the movant.  See Lujan v. Nat'l Wildlife Fed'n., 497

13  U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345

14  (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine

15  issue of material fact to defeat summary judgment).  "[U]ncorroborated and self-serving testimony,"

16  without more, will not create a "genuine issue" of material fact precluding summary judgment.

17  Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

18       Summary judgment shall be entered "against a party who fails to make a showing sufficient to

19  establish the existence of an element essential to that party's case, and on which that party will bear

20  the burden of proof at trial."  Celotex, 477 U.S. at 322.  Summary judgment shall not be granted if a

21  reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 248.

22  **III. Analysis**

23      **A. Retaliation**

24       To establish a *prima facie* case for retaliation, Plaintiff must show that (1) he engaged in a

25  protected activity under Title VII; (2) his employer subjected him to an adverse employment action;

26

and that (3) a causal link exists between the protected activity and the adverse action.  See Porter v. Cal. Dept. of Corrections, 419 F.3d 885, 894 (9th Cir. 2005).  When a plaintiff has asserted a *prima facie* retaliation claim, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its decision.  See id.  If the defendant articulates such a reason, the plaintiff bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive. See id.

Here, the Court finds that although Plaintiff has established the first two elements of a *prima facie* case of retaliation, he fails to overcome Defendant's nondiscriminatory explanation regarding the causal link between the Defendant's decision to terminate Plaintiff, and the protected activity.

When Plaintiff's Complaint was filed, Defendant had the burden to prove that it had a legitimate nondiscriminatory reason for terminating Plaintiff's employment.  Defendant overcame that burden by providing evidence that Plaintiff had acted contrary to the instructions of his supervisors.

Plaintiff, in opposition, avers that Vons fails to demonstrate a legitimate nondiscriminatory reason for its actions by arguing that Jones influenced the decision to terminate Plaintiff in retaliation for the sexual harassment claim he filed in September 2006.  Specifically, Plaintiff argues that "[w]here . . . the person who exhibited discriminatory animus influenced or participated in the decision making process, a reasonable fact finder could conclude that the animus affected the employment decision." Dominguez-Curry v. Nevada Transp. Dep't, 424 F.3d 1027, 1039 (9th Cir. 2005).

Here, however, Jones' only influence was that she reported the Plaintiff's behavior to Martinez, Tyler's supervisor.  Martinez herself found Tyler's behavior unprofessional and against Vons' company policy.  Martinez had the responsibility and authority to determine the best method to manage Tyler's behavior.  Moreover, subsequent to Martinez' decision to dismiss Plaintiff, Vons

1   offered to re-hire Plaintiff, on the condition that he be willing to comply with Vons' company

2   policies, but Plaintiff refused that proposal.

3       The Court finds Tyler's refusal to take down the clipboard to be a legitimate

4   nondiscriminatory reason for Vons' actions.  Accordingly, Plaintiff must show by specific and

5   substantial evidence that Vons' reasons for terminating his employment are merely pretextual and the

6   real reason for its actions was unlawful gender discrimination.  See Bradley v. Harcourt, Brace &

7   Co., 104 F.3d 267, 270 (9th Cir. 1996) (evidence of "pretext" must be "specific" and "substantial" in

8   order to create a triable issue with respect to whether the employer intended to discriminate on the

9   basis of sex).

10      "[T]he Plaintiff may establish pretext either directly by persuading the court that a

11  discriminatory reason more likely motivated the employer or indirectly by showing that the

12  employer's proffered explanation is unworthy of credence."  Raad v. Fairbanks North Starborough,

13  323 F.3d 1185, 1197 (9th Cir. 2003).  Here, Plaintiff has failed to demonstrate that Vons' articulated

14  reason for its actions is merely pretextual.  Specifically, Plaintiff has not provided sufficient evidence

15  to claim that a discriminatory reason more likely motivated Defendant's decision to dismiss him, or

16  offered proof that Defendant's explanation is unworthy of credence.

17      Plaintiff also argues that proof of a *prima facie* case together with any direct or circumstantial

18  evidence is sufficient to defeat a motion for summary judgment.  Specifically, Plaintiff argues that in

19  proving pretext, "[t]emporal proximity between protected activity and adverse employment action

20  can by itself constitute sufficient circumstantial evidence of retaliation in some cases."  Bell v.

21  Clackama County, 341 F.3d 858, 865 (9th Cir. 2003).  In this instance, however, Plaintiff fails to

22  demonstrate an inference of pretext, as there is an eleven month gap between Tyler's report of sexual

23  harassment and his termination.  Although the Ninth Circuit has ruled that this range of time can be

24  sufficient to support an inference (Allen v. Iranon, 283 F.3d 1070 (9th Cir. 2002)), in this case, the

25  protected activity and adverse employment action are not sufficiently related, because Jones was not

26

6

involved in the decision to terminate Tyler's employment.  Beyond averring temporal proximity, Tyler offers no evidence (direct of circumstantial) to buttress his claim of pretext.  Specifically, Tyler fails to demonstrate that the administrative personnel who made the decision to terminate his employment were aware of his previous sexual harassment complaint against Jones, or that Vons' proposal for Tyler's continued employment was not acceptable.  For these reasons, the Court finds that Tyler has failed to demonstrate that Vons' stated reasons for its adverse employment action were pretextual, or somehow demonstrate retaliatory motive.

**III. Conclusion**

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (#26) is **GRANTED**.

DATED this 28th day of September 2010.

_____
Kent J. Dawson
United States District Judge

7